1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  **TONY LESSIE,**                    Civil     10-cv-2065-
                                         No.       IEG(RBB)
12
                              **Petitioner,**
13                                       **REPORT AND RECOMMENDATION OF**
                                         **UNITED STATES MAGISTRATE**
14            **vs.**                    **JUDGE DENYING PETITION FOR**
                                         **WRIT OF HABEAS CORPUS**
15
    **TIM VIRGA, Warden,**              **[ECF NO. 4]**
16
                             **Respondent.**
17  ─────────────────────────────

18        Tony Lessie ("Lessie"), a state prisoner proceeding pro se

19  and in forma pauperis with a First Amended Petition for Writ of

20  Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"), seeks

21  relief from his November 2006 second degree murder conviction in

22  San Diego County Superior Court Case No. SCN200740, and from the

23  true findings that he used a firearm in connection with the

24  murder.  He was sentenced to prison for a term of forty years to

25  life.  Respondent filed an Amended Answer, conceding the Petition

26  was timely filed but opposing any habeas relief.  (Am. Answer 6,

27  \\

28

                                     1

1    ECF No. 15.)[1]  Lessie's deadline to file a traverse was
2    January 27, 2012.  (Minute Order, ECF No. 14.)  None was filed.
3         The dispositive issue presented in Lessie's Petition is
4    whether the <u>Miranda</u> rights of this underage defendant were
5    violated when he provided incriminating statements during two
6    custodial interrogations between the time he asked to call his
7    father and the granting of that request.  The Court has reviewed
8    the pertinent portions of the record.  For the reasons discussed
9    below, it is recommended that the Petition be **<u>DENIED</u>**.

10   **I.    BACKGROUND**

11        In its published opinion affirming the conviction, the
12   California Supreme Court summarized the underlying facts.  <u>People</u>
13   <u>v. Lessie</u>, 47 Cal. 4th 1152, 223 P.3d 3, 104 Cal. Rptr. 3d 131
14   (2010).  A presumption of correctness attaches to the state court
15   determination of factual issues.  28 U.S.C.A. § 2254(e)(1) (West
16   2006).

17            The evidence at trial showed that Rusty Seau died
18        in a street confrontation on June 9, 2005, in Oceanside.
         Police, acting on information identifying defendant as
         the shooter, arrested him at 6:40 a.m. on September 20,
19        2005, at the home of his aunt and uncle in Hemet as he
         attempted to escape through the rear window.  Although
20        defendant formally resided with his father in Vista, his
         father had reported him missing some months earlier.
21        Defendant was, in his own words, "on the run from
         probation."  Defendant admitted his role in the shooting
22        during a custodial interrogation at a police station in
         Oceanside and again during a subsequent interrogation at
23        juvenile hall.  Defendant's confessions were generally
         consistent with the other evidence admitted at trial,
24        including his own testimony.

25            Defendant claimed he had been forced to shoot by
         James Turner, with whom he had been living.  Turner, who
26        used the gang moniker "Black Jack" and claimed

27        _____
              [1] Page numbers for docketed materials cited in this Report and
     Recommendation refer to those imprinted by the Court's electronic case
28   filing system.

> membership in gangs affiliated with the Crips, forced a confrontation with Seau and another man over an offense given earlier in the day.  Defendant, who used the moniker "Blue Devil," denied belonging to a gang but admitted wanting to join.  On the way to the confrontation, riding in a car with defendant and two others, Turner gave defendant a pistol and told him he "better shoot.  You got to shoot somebody."  Defendant described the shooting as "like an initiation thing" and believed he would be beaten or killed as "discipline" if he did not do as he was told.  Upon arriving at the scene of the confrontation, defendant, Turner and the others found that Seau and his companion did not want to fight.  Turner nevertheless "banged" on Seau by announcing his gang affiliation, which Seau in turn mocked, and Turner and a companion then attacked Seau. At this point, Turner shouted at defendant to shoot.  As Seau attempted to run away, defendant shot him fatally in the back.

Lessie, 47 Cal. 4th at 1157, 223 P.3d at 5, 104 Cal. Rptr. 3d at 134.

A March 28, 2006 information charged Lessie with the Seau murder.  (Lodgment No. 1, Clerk's Tr. vol. 1, 1-3, Mar. 28, 2006.) Lessie was sixteen years old at the time, but was tried as an adult.  His October 2006 trial lasted approximately four days. (Id., Clerk's Tr. vol. 2, 518-31, Oct. 24-27 and 30, 2006.)  He testified on his own behalf.  (Id. at 529-530; Lodgment No. 2, Rep.'s Tr. vol. 5, 620-95, Oct. 30, 2006.)  The jury deliberated more than three days before finding Lessie guilty of second degree murder, a violation of Cal. Penal Code § 187(a), with true findings that he intentionally and personally discharged a handgun causing bodily injury and death within the meaning of Cal. Penal Code § 12022.53(d) and personally used a firearm, a violation of Cal. Penal Code § 12022.5(a).  (Lodgment No. 1, Clerk's Tr. vol. 2, 452, 532-39, Oct. 31, Nov. 1, 2, and 6, 2006.)  He was sentenced on December 15, 2006, to forty years to life in prison. (Lodgment No. 2, Rep.'s Tr. vol. 6, 919-34, Dec. 15, 2006.)

Lessie appealed his conviction, alleging that the trial court committed reversible error by denying his motion to suppress pretrial admissions and admitting into evidence statements he made during two custodial interviews after he had asked to call his father.  Lessie argued that his incriminating statements were obtained in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).  (Lodgment No. 3, Appellant's Opening Brief at 26-40, People v. Lessie, No. D050019 (Cal. Ct. App. Apr. 8, 2008).)  In its reasoned decision affirming the judgment, the court of appeal observed:

> Lessie does not challenge the sufficiency of the evidence to support the jury's verdict and findings he fired the gun that killed Rusty Seau on June 9, 2005, in Oceanside, California.  Rather, the facts pertinent to our discussion of his appellate issues come from the suppression motion documents, the transcripts of the custodial interviews on September 20 and 21, 2005, and the record of the hearing on the matter.

(Lodgment No. 6, People v. Lessie, No. D050019, slip op. at 3-4 (Cal. Ct. App. Apr. 8, 2008) (footnote omitted).)

The court of appeal discussed both the "totality of the circumstances" test of Fare v. Michael C., 442 U.S. 707, 728 (1979), and People v. Hector, 83 Cal. App. 4th 228, 99 Cal. Rptr. 2d 469 (2000), as well as the "per se" rule of People v. Burton, 6 Cal. 3d 375, 383-84, 491 P.2d 793, 99 Cal. Rptr. 1 (1971), urged by Lessie.  The Burton court had created a state-law rule.

> Accordingly, we hold that when, as in this case, a minor is taken into custody and is subjected to interrogation, without the presence of an attorney, his request to see one of his parents, made at any time prior to or during questioning, must, in the absence of evidence demanding a contrary conclusion, be construed to indicate the minor suspect desires to invoke his Fifth Amendment privilege.  The police must cease custodial interrogation immediately upon exercise of the privilege.

4

<u>Burton</u>, 6 Cal. 3d at 383-84, 491 P.2d at 798, 99 Cal. Rptr. at 6;
<u>accord</u> <u>People v. Rivera</u>, 41 Cal. 3d 388, 710 P.2d 362, 221
Cal.Rptr. 562 (1985).

The California Court of Appeal thoroughly summarized the
parties' arguments to the trial court, the conduct and content of
the motions hearing, Lessie's two interviews on September 20 and
21, 2005, and the potential conflict between the federal and state
law standards.  It  concluded that the trial judge properly denied
Lessie's suppression motion under <u>Edwards v. Arizona</u>, 451 U.S. 477
(1981).  (Lodgment No. 6, <u>People v. Lessie</u>, No. D050019, slip op.
at 2-3.)  The <u>Edwards</u> Court emphasized that the validity of a
waiver of the right to counsel focuses on whether the defendant
understood his rights and intelligently and knowingly relinquished
them.  <u>Edwards</u>, 451 U.S. at 481-82.  "[T]he Fifth and Fourteenth
Amendments' prohibition against compelled self-incrimination
require[s] that custodial interrogation be preceded by advice to
the putative defendant that he has the right to remain silent and
also the right to the presence of an attorney."  <u>Id.</u>

Lessie petitioned the California Supreme Court for review,
raising the same challenges he raised in the court of appeal and
arguing for retention of the rule in <u>People v. Burton</u>.  He
contended the <u>Fare</u> case did not supersede <u>Burton</u>, and because
there are no other procedural safeguards for juveniles facing
custodial interrogation, even under the totality of the
circumstances test, he had invoked his <u>Miranda</u> rights by asking to
call his father.  (Lodgment No. 7, <u>People v. Lessie</u>, No. [S163453]
(Cal. [filed May 12, 2008]) (petition for review at 13-27).)
\\

The court granted the petition for review.  (Lodgment No. 8, _People v. Lessie_, No. S163453 (Cal. July 23, 2008) (order granting petition for review).)  The state supreme court issued a reasoned decision on January 28, 2010, superseding the opinion of the court of appeal but reaching the same result.  It summarized Lessie's claim as follows:

> Defendant Tony Lessie, then 16 years old, was tried as an adult and convicted of second degree murder. (Pen.Code, § 187, subd. (a).)  Defendant challenges his conviction, claiming the trial court prejudicially erred under _Burton_, _supra_, 6 Cal.3d 375, by admitting into evidence confessions he made during two custodial interrogations.

_Lessie_, 47 Cal. 4th at 1157, 223 P.3d at 4, 104 Cal. Rptr. 3d at 134.

In his opening brief, Lessie argued that admissions he made during the interviews on September 20 and 21, 2005, at the police station and at juvenile hall, respectively, were obtained in violation of _Miranda_; as a result, the evidence should have been suppressed under California's _Burton_ rule or, alternatively, under the federal "totality of the circumstances" test.  (Lodgment No. 9, Appellant's Opening Brief at 22-34, _People v. Lessie_, 47 Cal. 4th 1152, 223 P.3d 3, 104 Cal. Rptr. 3d 131 (No. S163453).) Respondent argued that whether a minor has invoked his or her _Miranda_ rights must proceed solely under the totality of the circumstances test, and Lessie fails that test.  (Lodgment No. 10, Respondent's Answer Brief at 10-17, 20-26, _People v. Lessie_, 47 Cal. 4th 1152, 223 P.3d 3, 104 Cal. Rptr. 3d 131 (No. S163453).)

The California Supreme Court framed the issue as "whether the [trial] court erred in admitting defendant's confessions into evidence." _Lessie_, 47 Cal. 4th at 1158, 223 P.3d at 5-6, 104 Cal.

Rptr. 3d at 135.  The court expressly intended "to reexamine _People v. Burton_ (1971) 6 Cal. 3d 375 (_Burton_) in which this court fashioned a special rule to govern the application of _Miranda v. Arizona_, (1966) 384 U.S. 426 (_Miranda_) to minors." _Lessie_, 47 Cal. 4th at 1156, 223 P.3d at 4, 104 Cal. Rptr. 3d at 133.  The state supreme court acknowledged that whether _Burton_ "remains valid depends on whether it is compelled by federal constitutional law." _Id._ at 1164, 223 P.3d at 9, 104 Cal. Rptr. 3d at 139.

_Lessie_ observed that in _Fare_, the United States Supreme Court reversed the California Supreme Court.  The state court had "unjustifiably extended" _Miranda_ "by treating a suspect's request to speak with someone other than an attorney [his probation officer] as an invocation of the Fifth Amendment privilege." _Id._ at 1165, 223 P. 3d at 10, 104 Cal. Rptr. 3d at 140.  The California Supreme Court determined it was compelled to hold that the federal totality-of-the-circumstances test applied to a minor's claim that his statements were elicited in violation of _Miranda_.  _Id._ at 1167, 223 P.3d at 11-12, 104 Cal. Rptr. 3d at 141-142.  The state court relied on the analysis in _Fare_, equating, for _Miranda_ purposes, "a minor's request to see a parent with a request to see a probation officer." _Id._ at 1166, 223 P. 3d at 11, 104 Cal. Rptr. 3d at 141.  _Fare_ "leaves the rule of _Burton_ . . . (concerning parents) with no more basis in federal law than the rule of _In re Michael C._ (concerning probation officers), which the court in _Fare_ expressly disapproved." _Id._ (internal citation omitted).

Lessie did not pursue collateral review in the state courts. (_See_ Am. Pet. 3-4, ECF No. 4.)  On October 4, 2010, he filed his

7

pro se federal Petition, followed by a First Amended Petition on November 15, 2010 ("Petition") [ECF Nos. 1, 4].  Lessie's Petition raises the same two grounds for relief that the state courts had rejected.  Ground one alleges a "violation of his Fifth Amendment rights under Miranda." (Id. at 6.)  Ground two alleges a violation of his "statutory rights to two completed phone calls within an hour of confinement." (Id. at 8.)  Respondent filed an Answer to the original Petition, then an Amended Answer in response to the Court's order to respond to the operative pleading [ECF Nos. 13, 14, 15].

The trial court disposed of Lessie's ground two state-law claim by concluding that "the police had committed at least a technical violation of the statute but found no authority for excluding defendant's statements as a remedy." Lessie, 47 Cal. 4th at 1161, 223 P.3d at 7, 104 Cal. Rptr. 3d at 137 (footnote omitted).  The court of appeal similarly concluded:

> We agree and find, as the trial court did, that Lessie's responses to [Detective] Deveney's questions of who else he wanted notified and whether he wanted to be the one to call his father, were merely circumstantial evidence of Lessie's intent to have his father notified about his arrest and not an invocation of his Miranda rights.

(Lodgment No. 6, People v. Lessie, D050019, slip op. at 18 (footnote omitted) (discussing technical violations of section 627(b) of Welfare and Institutions Code).)

The California Supreme Court subsequently noted that "Defendant no longer maintains that Welfare and Institutions Code section 627, subdivision (b), requires the exclusion of his statements to police.  Indeed, the only relevant authority rejects exclusion as a remedy." Lessie, 47 Cal. 4th at 1161 n.2, 223 P.3d

8

at 7 n.2, 104 Cal. Rptr. 3d at 137 n.2.  Accordingly, the court discussed the merits of Lessie's <u>Miranda</u> claim but did not address the statutory violation any further.

**II.  DISCUSSION**

    **A.  <u>Legal Standards</u>**

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.A. § 2254(a) (West 2006).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls review of Lessie's Petition.  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 322-23 (1997).  AEDPA imposes a "'highly deferential standard for evaluating state-court rulings,'" requiring "that state-court decisions be given the benefit of the doubt."  <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002) (quoting <u>Lindh</u>, 521 U.S. at 333 n.7).

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  <u>Harrington v. Richter</u>, 562 U.S. __, __, 131 S. Ct. 770, 784 (2011).  Federal habeas relief is available under 28 U.S.C. § 2254(d)(1) only if the state court result "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C.A. § 2254(d)(1) (West 2006).  "[R]eview under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  <u>Cullen v. Pinholster</u>, 563 U.S. __, __, 131

S. Ct. 1388, 1398 (2011).  Relief is available under 28 U.S.C. §

2254(d)(2) only if the state court result "was based on an

unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C.A. §

2254(d)(2) (West 2006).

> Factual determinations by state courts are presumed
> correct absent clear and convincing evidence to the
> contrary, and a decision adjudicated on the merits in a
> state court and based on a factual determination will
> not be overturned on factual grounds unless objectively
> unreasonable in light of the evidence presented in the
> state court proceeding.

Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citations

omitted); see Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007).

A decision is "contrary to" clearly established precedents

if it "'applies a rule that contradicts the governing law set

forth in our cases' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of this Court and

nevertheless arrives at a result different from our precedent.'"

Early v. Packer, 537 U.S. 3, 8 (2002) (quoting Williams v. Taylor,

529 U.S. 362, 405-06 (2000) (distinguishing the "contrary to"

standard from the "unreasonable application" standard).  An

"unreasonable" application of precedent under 28 U.S.C. §

2254(d)(1) "must have been more than incorrect or erroneous"; it

"must have been 'objectively unreasonable.'"  Wiggins v. Smith,

539 U.S. 510, 520-21 (2003) (citations omitted).  Federal habeas

courts apply AEDPA standards to "the last reasoned decision" by a

state court addressing the merits of the federal constitutional

claims raised by state prisoners seeking relief from their

convictions or sentences.  Campbell v. Rice, 408 F.3d 1166, 1170

(9th Cir. 2005); see Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In deciding whether relief from an unconstitutional trial error is warranted, federal reviewing courts apply the standard from <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993), "uniformly in all federal habeas corpus cases under § 2254." <u>Bains v. Cambra</u>, 204 F.3d 964, 977 (9th Cir. 2000); <u>see</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 121-22 (2007). The error must have had "a substantial and injurious effect or influence in determining the jury's verdict." <u>Bains</u>, 204 F.3d at 977-78.

**B.    The California Supreme Court Decision**

**1.    Circumstances of Lessie's interrogation**

The California Supreme Court carefully re-examined the totality of the circumstances of Lessie's interrogation and the trial court's hearing on the matter.

Before trial, defendant moved to exclude both confessions from evidence, and the People moved to admit them. The evidence at the hearing on the motions consisted of the testimony of Detective Kelly Deveney, who participated in defendant's interrogation, and the transcripts, recordings and videotapes of the interrogations.

Detective Deveney testified she spoke with defendant about half an hour after he was taken into custody. She identified herself, told defendant that he was under arrest on a juvenile detention order and that he could, upon arrival in Oceanside, "make as many phone calls as he wanted to whomever he wanted." "And then I told him," Deveney continued, "I understand your aunt and uncle know that you're in custody; is there anyone else we need to notify? And he said yes, his father." Defendant did not, however, have his father's phone number. The drive to Oceanside took about an hour and a half. Upon arriving at the police station, defendant waited 10 minutes alone and was then given breakfast. After another 10 minutes, Detective Deveney entered with another officer, Detective Gordon Govier. After some small talk about food and the weather, the following exchange occurred:

"DEVENEY: Okay, we're getting that warrant confirmed now. I got the information, your dad's phone

number.  Do you want to make a call to him?  Or did you
want us to?

    "LESSIE: I'd like to call him.

    "DEVENEY: You would?

    "LESSIE: M-hm.

    "DEVENEY: Okay. So in the meantime, we've just got
to fill out these papers. You go by Tony Lessie, right?"

    A series of routine booking questions followed,
after which Deveney read defendant his rights under
<u>Miranda</u>, <u>supra</u>, 384 U.S. 436:

    "DEVENEY: Okay.  Tony because you're under age,
you're only sixteen, and because you're in our facility,
I have to read you your rights.  Alright.  So it's no
big deal but I have to by law.  You have the right to
remain silent.  Do you understand that?  Can you say
yes?

    "LESSIE: Yeah.

    "DEVENEY: Any statements you make may be used as
evidence against you.  Do you understand that?

    "LESSIE: Yeah.

    "DEVENEY: Okay.  You have the right to the presence
of an attorney, either retained or appointed free of
charge, before and during questioning.  Do you
understand that?

    "LESSIE: Yeah.

    "DEVENEY: So you understand those rights?

    "LESSIE: Yeah."

    After more booking questions, the detectives asked
defendant about his reasons for leaving his father's
house, his prior commitment to juvenile hall, his
relationship with Turner, Turner's involvement in
identity-theft crimes and gangs, and defendant's own
knowledge of gangs.  Eventually the detectives mentioned
the killing and told defendant that multiple witnesses
and members of his own family had identified him as the
shooter.  After briefly denying involvement, defendant
candidly confessed:  "Well to just scratch everything,
to just come clean with it:  I was there, I was, I was
there and I was the shooter.  But the thing that
happened was that if I didn't shoot, I was going to, you

12

know what I'm saying, get hurt by the other people."  A
detailed confession followed.

    After defendant had confessed, Detective Deveney
asked defendant whether he was "alright" or "need[ed] a
little break."  Defendant replied, "I would like to talk
to my dad."  The following exchange occurred:

    "DEVENEY: Let me go talk to Gordon for a minute,
you can compose yourself.  I'll be right back.  Knock on
the door if you need anything.

    "LESSIE: Can I make a phone call to my dad?

    "DEVENEY: Yes, you can.  I'm going to bring a cell
phone in to you and you can use it.  In fact you can use
it while we're taking the break okay.  Do you have the
number or do you want me to bring you the number Tony?

    "LESSIE: No, I need it.

    "GOVIER: Okay, we'll be right back.

    "(long pause)

    "DEVENEY: I'm sorry did you need something?

    "LESSIE: I need to use the bathroom.

    "DEVENEY: Bathroom.  Well, our sergeant is getting
you a Nextell, a phone, we're charging it up so you can
call your dad in privacy.  Okay.

    "GOVIER: We're going to go out, straight out this
door.

    "(pause)

    "DEVENEY: Well [sic] they're getting that phone
Tony, we're just going to ask you another couple of
quick questions, alright.  And then we'll leave you
alone in here and you can have whatever conversation you
want with him."

    The detectives then asked defendant additional
questions about the persons involved in the
confrontation and their gang affiliations.  Eventually a
telephone was brought to the interrogation room, the
detectives left, and defendant unsuccessfully attempted
to call his father.  Defendant left this message:  "Hey
man, what's up?  Dad is [ sic ] me, I'm in jail.  So,
see if you can, as soon as you get this, call back at
this number."

\\

1  <u>Lessie</u>, 47 Cal. 4th at 1158-60, 223 P.3d at 5-7, 104 Cal. Rptr. 3d

2  at 134-36.

### 2.  <u>Application of federal law to claim one</u>

4  The California Supreme Court noted that the state

5  Constitution was amended eleven years after the <u>Burton</u> case "to

6  limit the courts' power to exclude relevant evidence" from any

7  criminal proceeding, "including pretrial and post conviction

8  motions and hearings, or in any trial or hearing of a juvenile for

9  a criminal offense, whether heard in juvenile or adult court."

10  <u>Id.</u> at 1163, 223 P.3d at 9, 104 Cal. Rptr. 3d at 138.  The state

11  supreme court construed the amendment as forbidding courts from

12  excluding, "on the authority of the state Constitution, self-

13  incriminatory statements made during custodial interrogation."

14  <u>Id.</u> at 1163-64, 223 P.3d at 9, 104 Cal. Rptr. 3d at 139.

> Of course, the high court's decisions excluding
> self-incriminating statements under the authority of the
> federal Constitution, such as <u>Miranda</u>, and its progeny,
> continue to bind the state courts under the federal
> Constitution's supremacy clause (U.S. Const., art. VI,
> cl.2) despite the Truth-in-Evidence provision (Cal.
> Const., art. I § 28, subd. (f)(2).  Accordingly, whether
> the holding in <u>Burton</u> . . . remains valid depends on
> whether it is compelled by federal constitutional law.

20  <u>Lessie</u>, 47 Cal. 4th at 1164, 223 P.3d at 9-10, 104 Cal. Rptr. 3d

21  at 139 (internal citation omitted).  "The Truth-in-Evidence

22  provision permits the courts of this state to exclude a

23  defendant's self-incriminatory statements only under the

24  <u>compulsion</u> of federal law."  <u>Id.</u> at 1168, 223 P.3d at 13, 104 Cal.

25  Rptr. 3d at 143.

26  The <u>Lessie</u> court explained:

> We conclude <u>Burton</u>, <u>supra</u>, 6 Cal.3d 375, is no
> longer good law.  The <u>Burton</u> court based its holding on
> the United States Constitution, but <u>Burton</u>'s special

1  rule for minors is inconsistent with the high court's
2  subsequent decision in <u>Fare v. Michael C.</u> (1979) 442
   U.S. 707, (<u>Fare</u>), which requires courts to determine
3  whether a defendant--minor or adult--has waived the
   Fifth Amendment privilege by inquiring into the totality
   of the circumstances surrounding the interrogation.
4  (<u>Fare</u>, at pp. 724-725.)

5  <u>Lessie</u>, 47 Cal. 4th at 1156-57, 223 P.3d at 4-5, 104 Cal. Rptr. 3d

6  at 133-34.  It also disapproved "the dictum in <u>People v. Rivera</u>

7  (1985) 41 Cal.3d 388, to the effect that the rule of <u>Burton</u>,

8  <u>supra</u>, 6 Cal.3d 375, survives the high court's holding in <u>Fare</u>,

9  <u>supra</u>, 442 U.S. 707, as a 'component of the state constitutional

10  privilege against self-incrimination.'"  <u>Lessie</u>, 47 Cal. 4th at

11  1168 n.10, 223 P.3d at 13 n.10, 104 Cal. Rptr. 3d at 143 n.10

12  (citation omitted).

13  The California Supreme Court applied the federal standard

14  from <u>Fare</u> to Lessie's custodial interrogations and found no basis

15  "for construing [Lessie's] request to speak with his father as an

16  invocation of his Fifth Amendment rights."  <u>Id.</u> at 1170, 223 P.3d

17  at 14, 104 Cal. Rptr. 3d at 145.  "[T]he totality of the relevant

18  circumstances support[ed] the trial court's conclusion that

19  [Lessie] knowingly and voluntarily waived his Fifth Amendment

20  privilege."  <u>Id.</u>

21  There is no basis to disturb the state court decision unless

22  the California Supreme Court either applied the "totality of the

23  circumstances" rule from <u>Fare</u>, 442 U.S. 707, in an "objectively

24  unreasonable" manner or made objectively unreasonable factual

25  findings from the record presented.  28 U.S.C. § 2254(d).

26  <u>Fare</u> describes the familiar rule of <u>Miranda</u> and its progeny.

27  In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), this
   Court established certain procedural safeguards designed
28  to protect the rights of an accused, under the Fifth and

15

> Fourteenth Amendments, to be free from compelled
> self-incrimination during custodial interrogation.  The
> Court specified, among other things, that if the accused
> indicates in any manner that he wishes to remain silent
> or to consult an attorney, interrogation must cease, and
> any statement obtained from him during interrogation
> thereafter may not be admitted against him at his trial.
> <u>Id.</u>, at 444-445, 473-474.

<u>Fare</u>, 442 U.S. at 709.

The United States Supreme Court issued the writ of certiorari

in <u>Fare</u> "[b]ecause the California judgment [in <u>In re Michael C.</u>,

21 Cal. 3d 471, 579 P.2d 7, 146 Cal. Rptr. 358 (1978)] extending

the per se aspects of <u>Miranda</u> presents an important question about

the reach of that case . . . . [T]he judgment of the California

Supreme Court rests firmly on that court's interpretation of

federal law." <u>Fare</u>, 442 U.S. at 716-17.  The California court had

extended its 1971 <u>Burton</u> rule and reversed the judgment against a

minor who had confessed to a crime while in police custody after

his request to speak with his probation officer was refused; the

state court construed the request as a "call for help" that

demonstrated that the minor intended to invoke his Fifth Amendment

rights.  <u>See</u> <u>Lessie</u>, 47 Cal. 4th at 1164, 223 P.3d at 10, 104 Cal.

Rptr. 3d at 139-40.  The <u>Fare</u> Court rejected the state court's

construction of the Fifth Amendment.

> The rule the Court established in <u>Miranda</u> is clear.
> In order to be able to use statements obtained during
> custodial interrogation of the accused, the State must
> warn the accused prior to such questioning of his right
> to remain silent and of his right to have counsel,
> retained or appointed, present during interrogation.
> 384 U.S., at 473.  "Once [such] warnings have been
> given, the subsequent procedure is clear." <u>Ibid.</u> . . .
> [¶]  Any statements obtained during custodial
> interrogation conducted in violation of these rules may
> not be admitted against the accused, at least during the
> State's case in chief.

<u>Fare</u>, 442 U.S. at 717-18 (citations omitted).

16

A valid waiver of the constitutional right to counsel must "not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including background, experience, and conduct of the accused.'" Edwards, 451 U.S. at 482 (citations omitted). Fare held that "the California Supreme Court erred in finding that a juvenile's request for his probation officer was a per se invocation of the juvenile's Fifth Amendment rights under Miranda." Fare, 442 U.S. at 727-28. A request to see one's probation officer is not a request for an attorney. See id. at 728.

> [The] totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits — indeed, it mandates — inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.

Id. at 725 (citing North Carolina v. Butler, 441 U.S. 369 (1979)).

"After rejecting the argument that probation officers should be treated like attorneys for purposes of Miranda, the high court in Fare painstakingly reiterated the rule that only a request for an attorney constitutes a per se invocation of a suspect's Fifth Amendment privilege." Lessie, 47 Cal. 4th at 1165, 223 P.3d at 11, 104 Cal. Rptr. 3d at 140 (internal citation omitted). In finding it "clear that respondent voluntarily and knowingly waived

17

his Fifth Amendment rights," the <u>Fare</u> Court considered such

factual evidence from the record as the juvenile's ability to

understand the nature of his actions, his age, his prior

experience with the police, his probation status, and whether he

was "worn down by improper interrogation tactics or lengthy

questioning or by trickery or deceit."  <u>Fare</u>, 442 U.S. at 726-27.

The California Supreme Court applied those considerations to

Lessie's interrogations.

> As <u>Fare</u>, <u>supra</u>, 442 U.S. 707, 725, requires, we inquire
> "into the totality of the circumstances surrounding the
> interrogation, to ascertain whether the accused in fact
> knowingly and voluntarily decided to forgo his rights to
> remain silent and to have the assistance of counsel."
> Because defendant is a minor, the required inquiry
> "includes evaluation of the juvenile's age, experience,
> education, background, and intelligence, and into
> whether he has the capacity to understand the warnings
> given him, the nature of his Fifth Amendment rights, and
> the consequences of waiving those rights."  The
> prosecution bears the burden of demonstrating that the
> challenged waiver is valid by a preponderance of the
> evidence.  (<u>People v. Dykes</u> (2009) 46 Cal. 4th 731, 751,
> 95 Cal. Rptr. 3d 78, 209 P.3d 1.)

<u>Lessie</u>, 47 Cal. 4th at 1169, 223 P.3d at 13, 104 Cal. Rptr. 3d at

143-44.

> Lessie, like the juvenile in <u>Fare</u>, was sixteen at the time of

the police interrogations.  He, too, had previous experience with

the police and with the criminal justice system.

> Nothing in the record suggests defendant was unable
> to understand, or did not understand, the meaning of the
> rights to remain silent and to have the assistance of
> counsel, and the consequences of waiving those rights.
> Defendant was, at the time of his interrogation, 16
> years old and, while no longer in school, had completed
> the 10th grade and held jobs in retail stores.  While no
> evidence was offered that defendant had, or had not,
> previously been advised of his rights under <u>Miranda</u>,
> <u>supra</u>, 384 U.S. 436, he was no stranger to the justice
> system.  Defendant had been arrested twice before, once
> for burglary and making criminal threats, and once for
> fleeing police after a traffic stop and possessing

marijuana.  Both sets of charges led to proceedings in
juvenile court, and the second resulted in a commitment
to juvenile hall.  Nothing in this background, or in the
transcript of defendant's interrogation, suggests his
decision to waive his <u>Miranda</u> rights was other than
knowing and voluntary.  Asked by detectives to confirm
that he understood each right as read to him, he
answered affirmatively four times.  While defendant did
not expressly waive his <u>Miranda</u> rights, he did so
implicitly by willingly answering questions after
acknowledging that he understood those rights.  (<u>People
v. Cruz</u> (2008) 44 Cal. 4th 636, 667-668.)

. . . The trial court specifically found there was
no connection between defendant's request to speak with
his father and his decision to waive his Fifth Amendment
rights.  We see no reason to reject this finding.
Defendant did not say, for example, that he wanted to
speak with his father before answering questions or
wanted his father to call an attorney on his behalf.
Nor did defendant hesitate at any point to answer the
detectives' questions.

Under these circumstances, we see no basis for
construing defendant's request to speak to his father as
an invocation of his Fifth Amendment rights.
Accordingly, and for the additional reasons discussed
above, the totality of the relevant circumstances
supports the trial court's conclusion that defendant
knowingly and voluntarily waived his Fifth Amendment
privilege.  (<u>Fare</u>, <u>supra</u>, 442 U.S. 707, 725.)  That his
confessions were properly admitted into evidence
necessarily follows.

<u>Lessie</u>, 47 Cal. 4th at 1169-70, 223 P.3d at 13-14, 104 Cal. Rptr.

3d at 144-45; <u>see also</u> <u>id.</u>, n.11, n.12.)

For all the foregoing reasons, the state court decision

denying Lessie relief on the federal constitutional claim alleged

as ground one in his Petition comports with controlling United

States Supreme Court authority, and the record reflects his

custodial admissions and confession were made voluntarily after

proper <u>Miranda</u> admonishments he understood and validly waived, as

reasonably found by the state courts.  28 U.S.C. § 2254(d).

Accordingly, the Court should **<u>DENY</u>** habeas relief on the basis

alleged in ground one.  Lessie is not in custody in violation of federal law.  28 U.S.C. § 2254(a).

### 3.  **Violation of statutory rights**

Lessie's Amended Petition contains two claims.  (Am. Pet. 6, 7, ECF No. 4.)  In his second ground for relief, he alleges that his "statutory rights to two completed phone calls within an hour of confinement" were violated.  (<u>Id.</u> at 8.)  Respondent describes the two claims as interrelated and states that the California Supreme Court rejected Petitioner's claims.  (Am. Answer 6, ECF No. 15.)  "In Ground Two, Lessie claims that his statements should also have been suppressed due to the trial court's finding of a technical violation of California Welfare and Institutions Code section 627(b).  Lessie presented a similar claim in his opening brief in the California Supreme Court."  (<u>Id.</u> at 15.)

Lessie's opening brief, however, makes only passing reference to section 627(b) of the Welfare and Institutions Code.  (<u>See</u> Lodgment No. 9, Appellant's Opening Brief at 14-15, 26, 32, <u>People v. Lessie</u>, 47 Cal. 4th 1152, 223 P.3d 3, 104 Cal. Rptr. 3d 131 (No. S163453).)  Furthermore, in his reply brief, Lessie describes the officers' refusal to let him make a phone call within an hour of his arrest as a "violation of state law."  (Lodgment No. 11, Appellant's Reply Brief at 7, <u>People v. Lessie</u>, No. S163453.)  In this context, the California Supreme Court wrote, "Defendant no longer maintains that Welfare and Institutions Code section 627, subdivision (b), requires the exclusion of his statements to the police."  <u>People v. Lessie</u>, 47 Cal. 4th at 1161 n.2, 223 P.3d at 7 n.2, 104 Cal. Rptr. 3d at 137 n.2.

\\

20

1    Respondent does not contend that ground two in Lessie's

2   Petition is unexhausted.  (See Am. Answer 15, ECF No. 15.)

3   Nevertheless, "[a] State shall not be deemed to have waived the

4   exhaustion requirement . . . unless the State, through counsel,

5   expressly waives the requirement."  28 U.S.C.A. § 2253(b)(3) (West

6   2006).  Lessie has not fairly presented his statutory rights claim

7   to the California Supreme Court.  He has not described the federal

8   legal theory on which the claim is based.  See Duncan v. Henry,

9   513 U.S. 364, 365-66 (1995).

10    In any event, Lessie is alleging a violation of state law,

11   which is not cognizable in a federal habeas corpus proceeding.

12   Estelle, 502 U.S. at 67-68.  Because his unexhausted claim does

13   not raise a federal constitutional claim, the exhaustion of state

14   law remedies does not apply.  See Goode v. Smelosky, No. 08-8308-

15   PSG (DTB), 2009 U.S. Dist. LEXIS 99453, at *17 n.2 (C.D. Cal. Aug.

16   10, 2009) (citing Gutierrez v. Griggs, 695 F.2d 1195, 1197-98 (9th

17   Cir. 1983); see also Tillett v. Freeman, 868 F.2d 106, 108 (3d

18   Cir. 1989); Martin v. Solem, 801 F.2d 324, 331 (8th Cir. 1986).

19   Lessie's statutory rights claim would not be cognizable even if he

20   returned to state court to assert the claim.  The Court

21   accordingly recommends that habeas relief on the basis stated in

22   ground two be summarily **DENIED** because the claim is not cognizable

23   on federal habeas review.  Estelle, 502 U.S. at 67-68 (federal

24   habeas relief is unavailable for errors of state law).

25   **III. CONCLUSION AND RECOMMENDATION**

26    The Court submits this Report and Recommendation to United

27   States District Judge Irma E. Gonzalez under 28 U.S.C. § 636(b)(1)

28   and Local Civil Rule HC.2 of the United States District Court for

the Southern District of California.  For all the foregoing

reasons, **IT IS HEREBY RECOMMENDED** this habeas Petition be **DENIED**

on the ground that Petitioner is not in custody in violation of

any federal right.  **IT IS FURTHER RECOMMENDED** the Court issue an

Order (1) approving and adopting this Report and Recommendation

and (2) directing that judgment be entered denying the Petition.

    **IT IS HEREBY ORDERED** no later than July 6, 2012, any party to

this action may file written objections with the Court and serve a

copy on all parties.  The document should be captioned "Objections

to Report and Recommendation."

    **IT IS FURTHER ORDERED** any Reply to the Objections shall be

filed with the Court and served on all parties no later than July

20, 2012.  The parties are advised that failure to file objections

within the specified time may waive the right to raise those

objections on appeal of the Court's Order.  See Turner v. Duncan,

158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

1153, 1157 (9th Cir. 1991).

**DATED:** June 8, 2012

_____

    **HON. RUBEN B. BROOKS**
**UNITED STATES MAGISTRATE JUDGE**

22

10cv2065-IEG(RBB)